18-5261 Citizens for Responsibility and Ethics in Washington, et al. v. Federal Election Commission Crossroads Gratuitous Policy Strategies, et al. Mr. Kirby for the Appellate, Mr. McNeil for the Appellate. Mr. Kirby. May it please the Court. I'd like to reserve two minutes for rebuttal. Although it started out in a very different place, this case has really boiled down to the question of whether the District Court properly invalidated the FEC's disclosure regulation. That's all that's left to be decided. And although the Court has abundant briefing, I'm going to focus my oral argument here today on three reasons why the District Court should not have invalidated that regulation. The first reason, simply, is that Crewe's complaint to the FEC did not challenge the validity of the regulation, did not fairly, squarely, and forcefully call upon the agency to consider that point, and therefore the issue is waived and they have not exhausted that issue administratively. And it was error for the Court to decide that issue in the absence of a challenge before the agency and an opportunity for the agency to squarely and forcefully address the point. Secondly, statute of limitations. Because it was Crewe and not the FEC that raised the regulation, and because the FEC applied the regulation not to Crewe but to my client, Crossroads GPS, and because they applied the regulation giving it the meaning that Crewe said the regulation had, there is no exception to the six-year statute of limitations for judicial review of this 30-something-year-old regulation. And therefore, it was error for the District Court to invoke the exception that exists where a regulation is applied to the injury of a litigant. Thirdly, Crewe's claim that the plain language, the plain and ordinary language of the statute, is inconsistent with the regulation, thus depriving the FEC of any Chevron discretion to interpret the statute, simply overlooks the fact that this is not plain, ordinary language in the statute. The critical language in the statute, which speaks of being for the purpose of influencing an election, the transfer for that purpose, comes directly from the pre-Buckley Federal Election Campaign Act. It was repeatedly construed in Buckley to have a very narrow, specific, and objective meaning, rather than a natural and plain meaning. And Congress then retained that same language in the 1978 amendments, which then led to the regulation. So what we have here is not ordinary, plain, statutory language. What we have here is a term of art to be construed in light of the Buckley case, which required the FEC to understand the statute to impose objective, specific, and narrow restrictions. I'd like to add a fourth possibility, although it's not one that you are necessarily going to like, and that is that full relief should have been available to Crewe just on the basis of a correct reading of E-1-6. Because I have to say, as I look at E-1-6, I can find no basis for the interpretation that the OGC adopted, and that was the basis of your victory at the commission level. I think you have to start – Your Honor, I will respond to the reading of E-1-6, but even before that. When you look at what Crewe should have received and what was available to it, you have to look at what they said to the FEC and what they asked the FEC to do and what the relief has. If you look at the FEC complaint filed by Crewe, it starts off by saying – Before you do that, could you answer Judge Williams' question? Yes. Do you agree – That statute turns on the meaning of – Wait. Hold on a second. I'm sorry. I believe what he's asking is, should you have lost on a correct reading of the regulation anyway? Of the regulation? That's right. No. The regulation clearly at least can be read the way the agency read it. It's the way that Crewe read it when they described it in their complaint, and it's a correct reading of the regulation. I mean, it essentially requires a report of a contribution made for the purpose of furthering the reported independent expenditure. That's correct. Then if you work up in E1, you get to 3, which talks about the exact language. The amount, date, and purpose of each expenditure. So at the stage of 1-3, we have each expenditure to be identified, and then all the other ones, all the successive subparagraphs, appear to refer back to that. So it would seem that all one needs is that an expenditure be made for the purpose of advancing an expenditure as identified and listed under 3. Crossroads reported its expenditures, Your Honor. It reported each of it. My client, Crossroads, reported each of its expenditures. The money that it spent for express advocacy, that's what an expenditure is. Okay. We report it. The issue then is did we have to report contributions that we received for the purpose of making those specific express expenditures, and the answer is there were none. I understand that your reading of the statute evidently endorsed, although based on a decision that isn't disclosed to us, your reading of 6 is that it requires that they not simply that the donor have the purpose of furthering Crossroads' program of independent expenditures, of which it had seen samples, but that it approved the very one that you were, that is a subject of interest here. That's the way that regulation has been understood since NERT. I don't think Crew challenged that understanding of that regulation. Well, it certainly did claim multiple times in its administrative complaint that the nondisclosure by Crossroads was a violation of, it referred more broadly to 10.1 rather than, I think it's 10, yeah, 10.1 rather than particular subsections of 10.1, but it seems to me a natural reading of that would be to encompass subsection 6. Crossroads, in paragraph 16 of its administrative complaint, says that the FEC's regulation reflects the FEC's interpretation of the statute. It drops a footnote and it says we actually think the language might be broader than the statute, but that doesn't go anywhere and you don't present or exhaust an issue on a footnote in a background part of the brief. But then when they make their further allegations that Crossroads has violated the law, they first use the language of the regulation, which has been understood since forever, to require a tie between a particular contribution and a particular statement. Well, a tie is one thing. An absolute one-to-one concrete link, the sort that appears to be what the commission insists on, is quite a different thing and it seems to me has no basis in the language of the regulation naturally understood. Well, Your Honor, I guess I would say we respectfully disagree. Of course, you're the judge. I took it to be the judge. And that gives you a certain advantage in this discussion. But we do respectfully disagree with that. Secondly, it doesn't matter here. Because where that would lead you is to a conclusion that we should have had to disclose something. But that is all out of this case. After the district court decision. Well, that's an interesting question. I mean, 30111E protects you from sanctions if you acted on the basis of regulations, and let's assume you did. Of course, acting on the basis of a particular interpretation of a regulation might be different. But anyway, the commission certainly appelled or applied 3011E to you. Is it a sanction to order you to disclose information which, by hypothesis, I know you object to hypothesis, you ought to have disclosed? I don't think you have to even go there, Your Honor. For Crewe to try to force us to disclose something, they have to challenge the FEC's second dismissal of the administrative complaint that occurred after the district court judgment. They didn't do that within the time frame available. They now are no longer able to challenge that dismissal. Those issues have been dismissed. They're over. They're gone. They're dead. And Crewe acknowledges that in its brief. All we have left here is an APA facial ruling that the regulation itself is invalid. And it's that. You say that's all we have, but we're operating in a context where we get to the validity of the regulation only because it's the regulation under a particular interpretation that inflicts an injury on Crewe, right? Well, if we get there, I don't think we do, but that's their theory, yes. If it's the case that it's only a misinterpretation of the regulation that gets us to this injury on Crewe, then it seems to me that basis for judicial invalidation of the regulation drops out. And if the basis for invalidating the regulation drops out, the regulation shouldn't be invalidated, Your Honor. That's the problem. They are no longer here seeking. Well, perhaps so. They are no longer seeking disclosure from us. If we said that on the basis that Judge Williams is suggesting, then back in action would be a regulation interpreted the way Judge Williams is interpreting it in a way that you don't agree with, correct? You don't agree that the requirement of the link to a specific reported expenditure should be dropped out. Judge Williams is saying that the regulation should be interpreted that way. So you would not gain anything if we accepted Judge Williams' position. Is that right? We would not gain if you accepted their decision, but Judge Williams said the regulation is invalid on its face. That's the judgment that's under review here. Excuse me. No, I didn't say that. I'm sorry. Heaven forbid, Your Honor, I was confusing you with the district court judge, and that's something I should do. But no one is arguing that the regulation should be construed in a way other than the way you're understanding it. That's right. My understanding is that everyone accepted the way the regulation had been construed by the FEC since the beginning, and the issue then became did the fact – initially the issue was claimed by Crewe. The fact showed that precisely that kind of exact link had occurred. Then when the FEC said no, and therefore the regulation hasn't been violated, and therefore the statute hasn't been violated because this is how we interpret the statute, Crewe went to court. Crewe went to court, and it sort of morphed. But through their district court pleadings, they ended up claiming, among other things, that the regulation perhaps had been improperly construed by the FEC. But the way they presented their claim to the FEC was my client, Crossroads, had reported specific independent expenditures. According to the press, my client, Crossroads, had received money for the specific purpose of funding those specific independent expenditures, and therefore my client, Crossroads, had violated the regulation and with it the two underlying provisions of the statute. And the FEC's response was no, the facts simply don't bear it out. And then we have Crossroads to the group in court, and they're saying to the district judge, we want to invalidate this regulation, even though we never challenged its validity before the agency, and we want to do it because the agency has applied this regulation to our detriment, even though the regulation applied it at their invitation and giving it the construction that they asked for. I see, by the way, that I'm well into my rebuttal time. Let's assume that no one questioned the FEC reading of E-1-6. I think that's entirely true. But anyway, let's assume it. It's still the case that Crewe and you were only before the district court in order to assess the validity of the FEC action in response to the Crewe complaint, right? Well, no. And it would get to the – certainly a court would get to the validity of the regulation only on the justification that it's necessary to resolve this complaint. But suppose it isn't necessary to resolve this complaint. Suppose it's completely unnecessary. Pardon me for my cough here, Your Honor, but no, we were before the court on two claims. One, a FECA claim that the dismissal was wrong, and two, an APA-type claim that the regulation was invalid. And it's that claim that led to this ruling that is now really in dispute. The issue of whether the FEC complaint was properly dismissed is out of the case. We're now left simply with their APA count challenging the regulation facially, even though there's a six-year statute of limitations. Well, that's from saying that you have the statutory bar, and there's a way around that under standard cases of this circuit, I assume elsewhere, to where it's necessary to consider the validity of the regulation in order to resolve a specific complaint. But that disappears if the regulation has been misinterpreted. The way this Court has gotten around the statute of limitations – I don't mean any pejorative sense there, but the exception that has been carved out – is where the agency reached out and applied a regulation to the injury of a litigant. And the litigant says, the officer of the crew is walking down the street, the FEC says, this regulation lets me take your hat. They say, Congress never authorized you to take my hat. FEC says, well, it's an old regulation, the statute is wrong. They say, we always can say Congress never authorized that. It's true that the cases generally, perhaps universally, have involved the application against a party in order to push it around. But it was applied against crew here to prevent crew from getting relief, otherwise crew would have been entitled to it. It was provided – it was applied just the way crew is asked. If this is allowed, think, for example, of all the environmental regulations where parties can simply file a complaint saying a regulation has been violated, mumble some facts, they lose, and then they go to court and say, we want judicial review of that regulation, even though the statute has long since run, because they applied the regulation. That's not the way it has worked, Your Honor. It has worked when somebody is reaching out and doing something bad to somebody with a regulation, and they're saying Congress never authorized that. Here they came into the agency and said – I think that yours is a gloss on our cases. I haven't found any case where a party has been able to come into an agency, invoke a regulation, specify the way they want it interpreted, the agency applies it that way, finds they lose on the facts, and then they're given an exemption from the statute of limitations. If they have such a case, I don't think they disclose it to us in Greece. I'm not aware of it. And I think to allow that would just enormously expand the opportunity for attacking regulations, basically facefully, without regard for the statute of limitations that Congress has established. And for that reason, as well as the other reasons I mentioned at the beginning of my argument, Your Honor. Can I just, before you sit down, so let's just assume – I know you have your threshold arguments about why we should never get to the merits, but let's just, for purposes of this, just assume that we get past those arguments, including the statute of limitations one. I just want to make sure I understand your argument on the merits on the construction of C-1. So when you look at the words of C-1, what's your argument that under the words of C-1, there isn't a requirement to disclose the person, date, and amount? Only of a contribution. And a contribution, then, is defined as a transfer – let's see if I can find the language here – for the purpose of influencing an election. That language in Buckley is construed very narrowly. It's got to be an objective test. It's got to be no question that it's electoral in nature. It boils down to it's got to be a contribution directly tied to express advocacy. And that's what happens if you look at the FEC's explanation of this regulation. But I don't understand what that – The statute defines contribution. It doesn't define it the way you – post-Buckley, it defines it as for the purpose of influencing an election. It defines it that way, and that – It doesn't define it the way you're defining it. No, it does. Well, it doesn't, but that language comes from the pre-Buckley FECA statute, which Buckley repeatedly said is over-broad, over-vague. It can't stand in this area of regulating core First Amendment activity unless we narrowly construe it. Buckley said that in 76. In 78, Congress passes this amendment, retaining that language that Buckley has narrowly construed. In 80, when the FEC puts out the regulation, they say, we're doing the regulation this way because that's what the amendment says. Just look at the language, because everybody remembered Buckley at that point. And they sent that up to Congress. Congress didn't object. They sent the florent up to Congress. Congress didn't object. So the Supreme Court in 1986 in the Massachusetts Citizen for Life apparently forgot your interpretation. Is that possible? That was a – far be it for me to say the Supreme Court merely forgets anything anyway. But that was a passing comment. It wasn't passing. I mean, I understand the idea of dicta that's drive-by, that is, where it has no application to the case. But the Supreme Court statement was its defense of its own opinion against an FEC claim. Finally, the FEC maintains that the inapplicability of Section 441B to CFL would open the door to massive undisclosed political spending. The Court says, we see no such danger because NCFL will be required to identify all contributors who annually provide, in the aggregate, $200 in funds intended to influence elections. Well, that's right. And to influence an election is to be understood in the Buckley sense. And that means there's got to be an express tie to express advocacy. If it actually meant that, why would it go on in the same sentence to say, and will be bound to identify all persons making contributions over $200 who request that the money be used for independent expenditure? Clearly making two separate statements, one about influence elections and one about being used for independent expenditure. I think they used the language twice because this is, as you know, the 78th Amendment is an unartfully drawn amendment. And it actually has sort of two clauses there. But it turns out they both turn on what the meaning of contribution is. And they both require, under Buckley, an express and clear and objective tie to express advocacy. And that explains all of this. And that's why. Do you think the opinion of the panel that addressed the stay, which said that you were unable to demonstrate any likelihood of success and interpreted the matter in the way that Crewe does, also simply forgot the meaning of contributions? Far be it from me to suggest that the panel forgot anything, Your Honor. But that was a stay ruling on an emergency basis where we had to pick, trying to get immediate emergency relief, what arguments and supportive arguments we could make quickly, succinctly, get emergency relief. And that was their reaction to those arguments. Well, you think that the panel did not read Judge Howell's district court opinion because it was such an emergency that they couldn't read the district court opinion? Your Honor, I recognize that that opinion is there. I recognize that this court is going to look at it and think about what was said there. On the other hand, if you take a look at the Van Hollen case, which is a predecessor case to this that clearly points in our direction, there we too, and we should be perhaps making habit of this, but there we lost a stay effort. And nonetheless, the panel came out ruling in our favor. I don't think we are bound by what the Court of Appeals said, what that motion, but it's not a motions panel, it's a debate panel, said. I think it deserves respectful consideration by this court, obviously. But we're now before this court on full briefing and full argument and full amicus participation and an oral presentation for whatever little good it may have done. And the issue is now for this court to construe the statute. I have one follow-up question, which is, so even under your interpretation, I'm not quite sure how you get to a particular independent expenditure. Because if it's not a particular independent expenditure, then the linkage issue becomes difficult. If you look at Buckley between pages 40 and 80, they say each step along the way has to be clear so that people aren't engaging in core speech and later surprised to find themselves in violation of the law. If you don't know which expenditure, which ad you're talking about, if you're not linking that particular one, then it's hard to say that you know clearly what the consequences are going to be. Suppose it's a situation in which there's, you know, 14 pilot ads. And then the contributor just says, I don't care which one. I'm not worried about that. They all look perfectly fine to me. You know, here's my contribution. Just do with it what you will. Okay. You're suggesting where the contributor doesn't specify one, but specifies a group from which one is selected. Or doesn't even specify the group. If the contributor says this kind of thing seems fine to me, this is what I want to contribute to. There may be a little fuzzy line somewhere. That's not what's involved in our case here. But if you have those circumstances, as I understand the regulatory interpretation that is accepted by, to this point, by the parties and by the FEC, there would be no requirement of disclosure in that situation. If the person didn't say, I want that ad or that group one from that group of ads, but said, I want something kind of like that. I don't think it's ever been confronted by the FEC. I don't think this court has to speculate about it. We would say that wouldn't be enough. But that's just us. Can you compose a sentence in ordinary language, sort of hypothetical, someone being sent to a store to get something or authorized to make an improvement on a house where your narrow construction would be applied? I just, the concept, providing money for the furtherance of some purpose or project is naturally pretty broad. And someone who said, did you provide the money for that, and they had provided the money for it, although they hadn't spelled out every detail, would be a liar if he said no. Your Honor, if you get to the, if you get, there's always that little gray area, right? But if one reads Buckley, and I'm sure the court has, and Buckley, as it was drawing down, it was squeezing this test as far down as it could without having to say we're overturning it. They demanded, in the expressed advocacy context, very precise, very narrow, very direct linkages. We don't have that kind. And the argument hasn't been to this court that there was a misunderstanding as to the nature of these ads. That's all dropped out. All that's before the court right now is simply the broader challenge. And on the broader challenge, they lose the win-win. All right. We'll hear from Krueger now. Thank you. Good morning, Your Honors. May it please the Court. As this Court's questions, I think, have already demonstrated, the FEC regulation issue here squeezes the Federal Election Campaign Act's disclosure obligations beyond what the plain statutory text can bear. As this Court read from the MCFL decision, the FECA imposes two distinct disclosure obligations on those who make independent expenditures, which I'll refer to as IEs. First, to disclose- Speak a little louder. Oh, I'm sorry. Disclosures over $200 received in the calendar year. And to disclose all contributions over $200 for the purpose of furthering an independent expenditure. I think opposing counsel attempts to confuse this issue and bring in arguments that aren't in the brief, saying that the word contribution somehow has been now defined solely as money given for an express reported independent expenditure. But that's not true. And the facts of this case demonstrate that. On remand here, the FEC recognized that all the money that was involved in the underlying administrative proceeding were contributions that should have been disclosed under the FECA. First, money that was given to Crossroads that said, I like Josh Mandel, here's $3 million to help elect him. And Crossroads knew and sent an affidavit. It knew that money was being given to it to help it elect Josh Mandel. The FEC recognized on remand that is a contribution. Even if it's not directed to an independent expenditure or how Crossroads will actually use that money to elect Josh Mandel. It was given expressly for the purpose of influencing the election of Josh Mandel. Crossroads knew that and in fact used that money for that purpose. They ran eventually IEs in that race. But I think they also ran election communications and did some other activity that's also covered by the FECA as electoral activity. Secondly, as this court recognized, there were contributions given to Crossroads at a fundraiser. After the donors watched about 14 example ads, they were asked to give money to help fund those type of ads because the cost of airing those ads was going up. We understand they did so. Crossroads had never served, they had never received money from that. On remand, the FEC recognized those are not only contributions that should be disclosed under C1, but further contributions should have been identified under C2C as given for the purpose of furthering an independent expenditure. Even though there were no facts that they saw one ad that they decided to fund, a specific ad, or that there was a set of ads that they said, choose one of those, buy that. They saw ads that already aired, said we'd like that. Please take our money to make more ads like that in the future. And the FEC recognized the remand. Those are contributions to be not only disclosed under C1, but identified as given for the purpose of furthering an independent expenditure under C2C. So I didn't understand Crossroads to be disagreeing with anything you said because I thought the argument that was being made was that might well be true under what we understand a contribution to mean now, but that's not what contribution meant at the relevant time. I don't believe so. I think that's not, I don't understand Crossroads to be arguing that. I understand Crossroads to say that Buckley essentially put constitutional limits on contribution such that any money given in a way that's not expressly earmarked for one independent expenditure could not be a contribution under the statute. And that's just not right. Obviously, the FEC on remand recognized that. Also, I think opposing counsel confuses the discussion in Buckley of independent expenditures, the trigger, where the court was very strict in limiting that activity to ads that use express advocacy or things that have a similar meaning versus contributions, which the court said was not vague and that everyone understood meant money given to candidates, given to political committees, money spent in coordination with candidates, and money spent earmarked for any political purpose, not independent expenditures. It just defined that word. It could have used it. It did not. It's at any political purpose. And the FEC regulates a number of political activities beyond independent expenditures, partisan get-out-of-the-vote activities, partisan registration activities, electioneering communications now after BGRA are all regulated political activities. Even the FEC recognized in the rulemaking in the Van Hollen petition that the word contribution had some influence and impact on money given for electioneering communications as well. So it's not the case that after Buckley that contribution must only be money given for independent expenditures and definitely not the meaning that it has to be given for one particular independent expenditure in the way given. Particularly in light of that, and I suspect you don't want to win on my theory and whether Mr. Kirby wants to lose on it, can you explain to me why E-1-6, read in a perfectly straightforward manner, would not have required Crossroads to disclose the information that you were seeking? Well, we did allege below that the facts showed, at least gave reason to believe, that the regulation had been violated. The FEC rejected that theory. We, if the court were to say that the regulation is unambiguous, so there's no hour deference issue for the FEC, requires all disclosure required by the FECA, which would mean all... Well, that sort of begs the question in a way that isn't, I mean, presumably it should, but why don't we just look at the regulation as it's written? Well, Your Honor, the regulation as written... Wouldn't that be a good place to start? Apologize? Wouldn't that be a good place to start? I absolutely agree, but it does say money given, contribution given for the purpose of influencing the reported independent expenditure. So there, I think, any reasonable reading of that would say there has to be reported independent expenditure. Well, is there... That's interesting. What about the application of E-1-3 here? Is that... If I understand, E-1-3, I believe, requires the independent expenditure maker to disclose information about the expenditure itself. Right. So where the money was spent. So we... And those were made, right? Yes, I believe those were... The process did disclose expenditures, as far as we know. So that sort of sets up the successive subsections of E-1, culminating in E-1-6, which asks for, fundamentally, the source of each expenditure. Now, I grant you it involves all kinds of fascinating interpretations, or interpretive questions, because of the fungibility of money. But on the facts that you appear to have, it looks pretty direct. Well, Your Honor, I think here, for example, the Josh Mandel situation. Crossroads took money to help elect Josh Mandel. That was a contribution covered by the Act. The Act requires that money to be disclosed, regardless of whether that money was ever targeted toward any independent expenditure, regardless of whether Crossroads used that money in the independent expenditure. Right. The triggering activity, of course, is running an independent expenditure. That's what triggers the obligation to disclose. But the scope that the FECA sets out, then, is Crossroads must disclose all contributions over $200 in the calendar year. If you read the regulations covering that, we would understand that would be a very different situation if the regulation requires disclosure, as the FECA sets out. But we understand that's not the interpretation the FECA gave to it below. Can you just take me through the subsections of E1, 3 through 6, and explain why, on the facts of this case, it doesn't cover the Mandel IEs?  Yeah. Well, start, Your Honor. You've got it invalidated, but it's worth looking at what it says. First, it says in E1, subsection 1, reporting a person's name, which would be Crossroads, and the information about them. The identification of the person to whom the expenditure was made, so that's who Crossroads paid. We understand that was, I believe, covered. The amount, date, and purpose of each expenditure, so that would be how much did Crossroads spend on an asset. So we're going to have a bunch of expenditures for particular EIs. That's correct, Your Honor. Right, okay. Then, triggered statement indicates whether such an expenditure was in support or opposition to a candidate. That tells you who was the candidate referenced and whether it was supporting or opposing. A verification of the independent expenditure is, in fact, independent. Right. A coordinated expenditure would be a contribution under different laws. Finally, for relevance here, the identification of each person who made a contribution in excess of $200 to the person filing such a report, which contribution was made for the purpose of furthering the reported independent expenditure. The FEC has interpreted that, obviously, here below and under other matters. It's to the reported, the reporter referring back, you're right, to the independent expenditure that's been disclosed here. So it's money given for this independent expenditure. When Crossroads ran an ad supporting Josh Mandels, who gave money for that one ad you ran? So, as they said, Express Link. So really they had to watch that ad and say, I like that ad, here's the money for it. So suppose Crossroads activity in Ohio had one contributor and one independent expenditure, and that's all we know. Would E-1-6 not require identification of the donor there? That very well could in those facts that you're on. There may be a situation where even under the FEC's test, that might be an Express Link. But here that wasn't the facts below. There were multiple donors. The donation for Josh Mandel was actually a matching challenge, and we know about a million more dollars of, we don't know where that came from. It may have been one or more donors was going to Josh Mandel. And we know Crossroads engaged in activity beyond independent expenditures, I believe, in Ohio. And the statute tends to capture all that. So if there's any daylight between the statutory requirements to disclose all contributions over $200 received in the calendar year, or all contributions over $200 to further independent expenditures, regardless of whether they're reported one or not, and there's regulation, then the regulation is inconsistent with the statute. So when you said that you had made the argument that the regulation was not complied with when you made that argument below, were you saying that the FEC was misconstruing its own regulation, or were you saying that even if you construed the regulation in the way the FEC did, there were disclosures that were required to be made here? We alleged, I think it's helpful to understand the process here, Your Honor. To start an FEC investigation, there's a requirement that you allege facts to show a reason to believe, which essentially is kind of like a motion to dismiss automatically. So all we need to allege is facts to show that one could go out and go to an investigation to then prove up a violation. We thought there were enough facts there to at least warrant an investigation to ask them, why did you give money, was it for this ad? Was it for this ad? So in other words, if you make that's buying in to the FEC's interpretation of its regulation. That's a regulatory violation, you're right, Your Honor. We also alleged, of course, they violated the statute. Yeah, no, I get that. That's the issue that's before us in abstract terms. But I just think when you were answering Judge Williams earlier and you talked about the fact that you raised an argument that the regulation wasn't complied with, as I understood it, it's not that it wasn't complied with because the way Judge Williams is construing the regulation is the way that you construed it. It's that even if you disagree with the way he's construing it or suggesting it be construed and agreeing with the way the FEC construed it, then it still was not complied with. That's the argument that you were making. We did make that argument that essentially, yes, under the FEC's own interpretation, there were facts to show an investigation was warranted. But as we alleged in the complaints, there was also separate obligations under C-1 and C-2C, which we laid out. And we said the regulation was inconsistent with those. And I want to address Crossroads' argument that we didn't forcefully raise that issue in the administrative proceeding. It's saying a very different tune below, where in the administrative proceeding, it said, Cruz challenges, quote, obviously a suggestion the commission should disregard the plain language of regulation, unquote, because it's inconsistent with the statutory section we were laying out. Let me just ask again with respect to Judge Williams' question. So the question of whether it was furthering an expenditure or an independent expenditure, the facts were close, and it's a question of what the motive was. I take it that in addition to that, you had a separate string to your bow, which was the C-1 requirement. That has any contribution, regardless of whether it was intended to be furthering. So on Judge Williams' interpretation, that would not have given you the full result that you got from the district court. I believe that's correct, although I wasn't sure if you were trying to interpret the right. You'd still have to claim directly under the statute. Well, in our reading, what happened below was the regulation was applied to dismiss our claim under the statute. And that's what gave rise to our injury here, to challenge that regulation. Because they, at least under any theory, the FEC reads the regulation as not applying C-1 at all. That's what the FEC's position was below in the administrative proceeding. We recognize in the record in the, when it was adopted. Yes, the Federal Council said that. Right. Well, in the Federal Register, when they said the one, it's one sentence explaining the amendment, they said this implements both C-1 and C-16. I understand. But there isn't any way to read the regulation as including C-1. I don't think there would be any way to read the regulation. Of course, if this Court were to do so, that would be a very different reading. And I think that would, of course, be setting out in the law what that regulation means. But I would position it would be very hard to read the regulation to capture C-1's requirement to disclose all contributions over $200 in a calendar year. On the ambiguity that Mr. Kirby stresses, using language like for the purpose of furthering independent expenditure, why doesn't that, I'm quoting from C-2C, Why doesn't that create as much of a problem for you, potentially, if the commission is determined on this path, as the regulatory language? In other words, if the commission is really dedicated to this view, it's going to insist that in order to determine whether it was for the purpose of furthering an independent expenditure, it's got to have a contributor and an independent expenditure and the contributor saying, I like that ad, run it. I'll pay for it. Well, Your Honor, here on remand, that's actually not what happened. The example of individuals attending a fundraiser, watching example ads and saying, I like this kind of work, here's some money to go do more of that, without saying, here's the one ad to pay for, pay for ad 67, attacking this candidate on this line of attack, merely they saw example ads and said, I like that work, here's some money. And that fact was enough for the FTC on remand to say, those contributions were given for the purpose of furthering an independent expenditure, even if they were not given for the purpose of furthering any particular one, and even if none of the independent expenditures ever actually ran. So, which is the difference in the prior statute, you had to report when you made a contribution, even if the IE never actually ran. So that's something that's captured by C2C. If you give money thinking, I like independent expenditures, I like your work, here's some money to help that work, that money has to be reported whenever the disclosure is triggered, even if there's no tie between that intent and the ad that eventually runs. Can I ask you a question about C1, just to get back to C1 for a second. So under your interpretation of C1, if you have an entity that does a bunch of stuff and a sliver of what they do is independent expenditures, but they do all kinds of other work too, some of which maybe has nothing to do with campaigns at all, then the way you read C1 is, if they spend more than $250 a year on a particular independent expenditure, then C1 requires disclosure of every contributor to the organization. Contributor, but not donor. Those are different words. Yes, so contributor brings in the statutory definition of contributor, which then ties it to... Exactly, and that's why the money given for Josh Mandel is qualified, that was money given to help that election, but in the hypothetical crossroads raise, if someone were to give money to crossroads to help it build a shelter for puppies... That has nothing to do with the statutory definition of contribution, so that's a donor. Exactly. Yeah, okay. Any further questions, Your Honor? No, thank you. Thank you, Your Honor. I know you have no time left, but we let each side go over a bit, so why don't you take another minute. Your Honor, I believe I've said what I think I need to say. I'd be happy to answer questions. Otherwise, I submit. Excellent. Thank you very much. We'll take the matter under submission.
judges: Garland, Srinivasan, Williams